# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **A.H. and L.T.**

**No. 19-0856** (Wood County 15-JA-117 and 15-JA-118)

**FILED**
**April 28, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Stepmother B.T., by counsel George M. Torres, appeals the Circuit Court of Wood County's August 23, 2019, order terminating her parental rights to A.H. and L.T.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem, Robin S. Bonovitch, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in adjudicating her as an abusing parent and terminating her parental rights instead of imposing a less-restrictive dispositional alternative.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In August of 2015, the DHHR filed its initial abuse and neglect petition that alleged inappropriate discipline and corporal punishment against the children's mother and her wife, petitioner herein. In February of 2016, petitioner and the mother entered stipulations that acknowledged their abusive and neglectful behaviors. As such, the circuit court found the children to be abused and neglected. After complying with the terms of an improvement period, the circuit court returned custody of the children to petitioner and the mother, who were dismissed from the case "but remained named as parties in interest" regarding the ongoing

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

proceedings for the children's fathers. However, in July of 2017, the DHHR filed an amended petition regarding unexplained bruising to A.H. while in the care of petitioner and the mother. Thereafter, the DHHR filed another amended petition that alleged petitioner and the mother engaged in inappropriate discipline of the children. After multiple continuances, the circuit court heard evidence at a series of adjudicatory hearings.

According to the record, A.H.'s school principal testified that he observed "significant bruising to the child's buttocks." When the principal asked the child how he was injured, the child "'dropped his head' and stated that he had fallen off the monkey bars." The child called the parents about the injuries and, in the principal's presence, spoke with petitioner, who "asked the child if anyone had seen his 'butt' and told the child not to show the injuries to anyone." A school health service coordinator examined the child and observed "broken blood vessels to [the child's] backside as well as his hip extending down his leg." According to the coordinator's testimony, "the child grimaced in pain when removing his pants" for the examination. The coordinator testified that the injury was to the child's right buttock and "did not appear as a normal childhood injury." Instead, she testified that the injury "appeared in an area that [she had] seen repeatedly as a result of non-accidental injury" with other children. The coordinator further testified that this type of injury was not consistent with a fall. Because of the questions surrounding the nature and extent of the child's injuries, the principal referred the matter to the DHHR.

As a result, a DHHR worker initiated an investigation. However, during the investigation the child would not allow the worker to observe the injury. Instead, the child went into the bathroom with petitioner and she took a single photograph of the child's left hip and the side of his left leg that depicted significant bruising. At that time, petitioner indicated that the child had fallen in their backyard. Because the child's injuries were inconsistent with the explanations provided, the DHHR informed petitioner and the mother that interviews were scheduled for both children, and petitioner wrote the date of the interviews on a calendar. After this conversation, however, petitioner "would not let DHHR workers in the house and would not allow DHHR workers access to the children." Additionally, neither petitioner nor the mother appeared for the scheduled interviews with the children, contacted the DHHR to reschedule, or otherwise explained why they did not appear. Petitioner and the mother later "indicated they were suspicious of the investigating CPS workers" as the only explanation for their noncompliance. The DHHR then repeatedly tried to make contact with petitioner and her family, but were unsuccessful. Upon one visit to the home, the DHHR "observed a print out of DHHR policy posted on the residence and no trespassing signs posted in the yard." Because of petitioner's refusal to cooperate with the DHHR, the past adjudication for inappropriate discipline, and the nature of the child's injuries, the DHHR ultimately obtained emergency custody of the children, which required assistance from law enforcement and "took approximately [two] hours." When the DHHR obtained custody of the children, A.H. "appeared underweight, pale and was shaking hysterically."

Once in the DHHR's custody, the children underwent forensic interviews and made several disclosures of petitioner and the mother's abusive conduct. According to A.H., he was punished by being made to "run up and down the stairs 'all night.'" The child also provided multiple inconsistent explanations for the injuries to his legs, including that he fell in a hole and

hit a wall playing with his sister. At one point he also indicated that he could not remember how he was injured. A.H. also indicated that his "mother" "accidentally hit his head with the hatch of the car . . . and he had to get stitches." During her interview, L.T. indicated that both children got whipped with a belt at home, although she later clarified that only A.H. was whipped. She also indicated that both children "have to run up and down the stairs when they get in trouble." In response to multiple questions, the child indicated that she could not provide answers and, when questioned why she could not answer, responded that "Mom said I can't."

Both petitioner and the mother testified and indicated that A.H. fell in a hole in their backyard. After being confronted with evidence that the child initially said he fell from monkey bars, the mother then claimed the child also fell from monkey bars in a separate incident. The circuit court, however, found that petitioner's "attempted explanation of the bruising is not consistent with the injuries the child sustained" and that her testimony lacked credibility. Further, petitioner denied telling A.H. not to talk to the principal about the injury, in direct contradiction to the principal's testimony. Based on the evidence before the circuit court and its interactions with the child, the court found that A.H. "is timid, fearful and highly stressed to a degree which causes him to be defensive about his injuries and unwilling to speak openly and frankly about how they occurred and the person(s) responsible." Ultimately, the circuit court found that petitioner and the mother were the children's primary caregivers when A.H. was injured and that A.H. "was physically abused by [petitioner and the mother] each of whom either participated in the abuse or allowed it to occur." As such, the circuit court adjudicated petitioner of abusing the children. Petitioner and the mother were thereafter granted post-adjudicatory improvement periods. However, the circuit court held a series of hearings on the DHHR's motion to terminate these improvement periods over the next several months and, ultimately, granted the motion in June of 2019.

In July of 2019, the circuit court held a dispositional hearing. The circuit court found that petitioner's parental fitness evaluation "reveal[ed] her to be in denial of the conditions giving rise to the [p]etition and of her chronic and substantial deficits as a caretaker generally and particularly as to" A.H. Ultimately, the evaluator concluded that "there is no reason to believe [petitioner] will make the changes necessary to overcome the conditions of her abuse and neglect of [A.H.] and she is only making an effort to show minimal compliance with the terms and conditions of her improvement period to end the scrutiny" brought on by the abuse and neglect proceedings. The circuit court heard further testimony from the DHHR that A.H. expressed a desire not to visit with petitioner or the mother. According to a DHHR employee, petitioner "instigates conflict between the two children" and A.H. is intimidated by petitioner. The circuit court further found that A.H. "is at significant risk of further abuse and neglect and of physical and emotional harm" by petitioner. This was based, in part, upon both petitioner and her wife testifying at an earlier hearing that "the only improvement they needed to make in their parenting was to watch their children 24/7 and den[ying] any other deficiencies." Because there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect

and because the children's welfare required it, the circuit court terminated petitioner's parental rights.[2] It is from the dispositional order that petitioners appeal.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

First, petitioner asserts that the circuit court erred in adjudicating her upon the allegations in the amended petitions because the DHHR failed to prove by clear and convincing evidence that petitioner was an abusing parent and because the circuit court's findings of fact and conclusions of law are clearly erroneous. As this Court has routinely held,

> "[West Virginia Code § 49-4-601(i)], requires the [DHHR], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing [evidence].' The statute, however, does not specify any particular manner or mode of testimony or evidence by which the [DHHR] is obligated to meet this burden." Syllabus Point 1, *In Interest of S.C.*, 168 W.Va. 366, 284 S.E.2d 867 (1981).

Syl. Pt. 1, *In re Joseph A.*, 199 W. Va. 438, 485 S.E.2d 176 (1997) (citations omitted). This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *In re F.S.*, 233 W. Va. 538, 546, 759 S.E.2d 769, 777 (2014) (citation omitted). However, "the clear and convincing standard is 'intermediate, being more than a mere

---

[2]All parents' rights have been terminated. According to the parties, the permanency plan for the children is adoption by the current foster family. We also note that, in the dispositional order, the circuit court specifically ruled that "any and all rights of [petitioner] to the children, [L.T.] and [A.H.], be and are hereby forever TERMINATED." For simplicity in this memorandum decision, the Court will refer to this action as a termination of petitioner's parental rights.

preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases.'" *Id.* at 546, 759 S.E.2d at 777 (citation omitted). Finally, pursuant to West Virginia Code § 49-1-201, an abused child is one "whose health or welfare is being harmed or threatened by . . . [a] parent . . . who knowingly or intentionally inflicts, attempts to inflict, or knowingly allows another person to inflict, physical injury or mental or emotional injury, upon the child or another child in the home." Upon our review, we find no error in the adjudication below.

In support of this assignment of error, petitioner highlights only the evidence that she believes supports her position, while ignoring the overwhelming evidence that established that she and the mother physically abused A.H. and subjected both children to inappropriate discipline. Petitioner also ignores the overwhelming evidence that either she or the mother directed the children not to discuss the abuse in the home with anyone and actively impeded the DHHR's efforts to investigate the issues giving rise to the amended petitions. Critical, however, is the fact that petitioner's arguments all turn on credibility, as is evident by her assertion that "an objective fact finder [should not] afford credibility to the interview" of L.T. According to petitioner, the children's statements that did not support adjudication were "afforded no credibility," while statements that did support adjudication "were afforded full credibility." As a further basis for attacking the credibility of the interviews, petitioner highlights testimony from the interviewer that was elicited on cross-examination. Given that the circuit court heard this testimony, it is clear that it resolved this credibility determination for itself and we decline to disturb such determinations on appeal. *See Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations."). Because petitioner's argument is based substantially on her assessment of the credibility of witnesses and evidence below, we find that she is entitled to no relief.

Petitioner further asserts that the circuit court's adjudicatory order "'picks and chooses' which sections of the children's interviews were utilized in its findings." Petitioner then cites to several portions of A.H.'s interview that she believes are supportive of her arguments on appeal, while ignoring the fact that the circuit court found that the high degree of stress and fear that A.H. exhibited about the injuries resulted in his inability to "speak openly and frankly about how they occurred and the person(s) responsible." In short, petitioner's argument on appeal engages in exactly the type of "picking and choosing" that she alleges the circuit court engaged in below. Given that the circuit court cited voluminous evidence in support of its factual findings, we cannot find them to be clearly erroneous on appeal. Additionally, petitioner asserts that she "presented clear and convincing evidence of the exact date and place of A.H.'s fall and the manner in which the fall occurred and what injuries . . . he suffered in the fall," while failing to recognize that the circuit court found that the many different explanations for the injury, including the child's multiple explanations, were inconsistent with one another and the injuries themselves. Petitioner also fails to recognize that the circuit court found that her testimony lacked credibility. Ultimately, we find that the circuit court's reliance on certain evidence while discounting other evidence simply establishes that the circuit court, after weighing all the evidence, gave appropriate weight to the credibility of the various explanations for the injuries presented below. Contrary to petitioner's argument that the totality of the evidence establishes

that the DHHR failed to meet its burden of proof, we find that the totality of the evidence establishes that petitioner was properly adjudicated upon a finding that A.H. "was physically abused by [petitioner and the mother] each of whom either participated in the abuse or allowed it to occur." As such, we find that petitioner is entitled to no relief in this regard.

Next, petitioner argues that the circuit court erred in terminating her parental rights because the evidence was insufficient to find that there was no reasonable likelihood she could substantially correct the conditions of abuse and neglect in the near future. Again, petitioner couches this argument as one of credibility, which limits this Court's ability to disturb the circuit court's specific findings.[3] Petitioner further highlights evidence that she believes establishes that she was compliant with the terms and conditions of her improvement period and was demonstrating progress in correcting the conditions of abuse. What petitioner fails to recognize, however, is that there was overwhelming evidence that she refused to acknowledge the truth of the allegations against her, which resulted in the conditions of abuse being impossible to correct.

---

[3]In support of this argument, petitioner attacks the credibility of her parental fitness evaluation and the credibility of DHHR worker Charlotte Templeton, who testified extensively below. What petitioner fails to recognize, however, is that the circuit court expressly recognized the issues petitioner cites on appeal and properly considered them in weighing the evidence in question. In its dispositional order, the circuit court specifically found that petitioner's "parental fitness evaluation . . . is of limited value due to the Department's failure to provide the evaluating psychologist with all the relevant information known to it and presenting her with incomplete and misleading data." The circuit court went on to find, however, that "[i]n spite of these limitations[,] the evaluation of [petitioner] reveals her to be in denial of the conditions giving rise to the [p]etition." The circuit court also found that "[d]espite the Department's failure to provide the evaluating psychologist with the quantity and quality of information available to it, the [c]ourt agrees with the conclusion that there is no reason to believe [petitioner] will make the changes necessary to overcome the conditions of her abuse and neglect of [A.H]." Given that the circuit court recognized the issues with the evaluation, noted that it was considering them accordingly, and then went on to highlight extensive portions of the evaluations in its findings of fact at disposition, we find that the circuit court conducted an appropriate credibility determination regarding this specific evidence and decline to disturb it on appeal.

Similarly, the circuit court found that Ms. Templeton, the DHHR employee, "testified at multiple hearings and there were inconsistencies in her testimony which she explained to some degree but which diminish the probative value of her testimony." Despite this finding, the circuit court nonetheless cited Ms. Templeton's testimony at length in its findings of fact in the dispositional order. Again, given that the circuit court identified these inconsistencies, considered the witness's testimony in light of these issues, and still found that some of the testimony supported disposition, we find that the circuit court conducted an appropriate credibility determination regarding this specific evidence and decline to disturb it on appeal.

This Court has long held as follows:

[I]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). The record is replete with evidence of petitioner's failure to acknowledge the issues of abuse in her home. For instance, petitioner's parental fitness evaluation "reveal[ed] her to be in denial of the conditions giving rise to the [p]etition and of her chronic and substantial deficits as a caretaker generally and particularly as to" A.H. Most important, however, was petitioner's own testimony in July of 2018, during which she testified "that the only improvement [she] needed to make in [her] parenting" was to watch the children around the clock. According to the circuit court, petitioner "denied any other deficiencies."

Pursuant to West Virginia Code § 49-4-604(c), "'no reasonable likelihood that conditions of neglect or abuse can be substantially corrected' means that, based upon the evidence before the court, the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." The evidence of petitioner's failure to acknowledge the existence of a problem overwhelmingly established that petitioner could not correct the conditions of abuse and neglect because the problem was untreatable. Indeed, the circuit court specifically found that there was "no reason to believe [petitioner] will make the changes necessary to overcome the conditions of her abuse and neglect" of A.H. Regardless of any evidence to which petitioner cites regarding her compliance with services below, this evidence definitively establishes that there was no reasonable likelihood the conditions of abuse and neglect could be substantially corrected in the near future.

Additionally, the circuit court specifically found that A.H. was "at significant risk of further abuse and neglect and of physical and emotional harm" by petitioner. As such, the circuit court found that termination of petitioner's parental rights was necessary for the children's welfare, and we agree. Pursuant to West Virginia § 49-4-604(b)(6), circuit courts may terminate parental rights upon these findings. Additionally, to the extent that petitioner argues that termination of only her custodial rights was appropriate, this Court has held that

"[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

7

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As such, it is clear that the circuit court did not err in terminating petitioners' parental rights.

Finally, to the extent that petitioner argues that the circuit court erred in denying her a post-dispositional improvement period as a less-restrictive alternative to disposition, we disagree. This Court has long held that the decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements . . . ."). Additionally, because she was previously granted a post-adjudicatory improvement period, West Virginia Code § 49-4-601(3)(d) required petitioner to "demonstrate[] that since the initial improvement period, [she] ha[d] experienced a substantial change in circumstances." The record simply does not support a finding that petitioner experienced a substantial change in circumstances after the granting of her post-adjudicatory improvement period. If anything, her circumstances deteriorated, given that the evidence of petitioner's denial of her abuse of the children continued to mount subsequent to the granting of that earlier improvement period. As such, we find no error in the circuit court's denial of petitioner's request for additional time under an improvement period.

For the foregoing reasons, we find no error in the decision of the circuit court, and its August 23, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**:  April 28, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison